IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACQUELINE R. SUSCAVAGE
and JOSEPH A. SUSCAVAGE,
wife and husband,
     Plaintiffs

v.

NATIONWIDE MUTUAL
INSURANCE COMPANY,
     Defendant

No. 3:05cv501

(Judge Munley)

## MEMORANDUM

Before the court for disposition are the parties' motions *in limine* and a motion to "trifurcate" filed by the defendant. The matters have been fully briefed and are ripe for disposition. We will address each matter separately.

**Background**

As discussed in our memorandum regarding the defendant's motion for summary judgment, the basic background facts of this matter are not in dispute. In August 2001, Plaintiff Jacqueline Suscavage sustained injuries due to motor vehicle accident. Plaintiffs instituted a lawsuit against the tortfeasors. That lawsuit was settled for $125,000.00.

At the time of the accident, plaintiff had an automobile insurance policy with the defendant. The policy provided underinsured motorist ("UIM") coverage of $100,000.00 stacked over three vehicles for a total of $300,000.00 in stacked UIM coverage.

Plaintiff made a claim under her automobile insurance policy for UIM benefits in May 2004. Plaintiff's claim proceeded through arbitration in Wyoming County, Pennsylvania. Eventually, plaintiff obtained a UIM award

of $90,000.00.

Before the arbitration hearing was held, plaintiffs filed the instant action asserting bad faith in the handling of the UIM claim and breach of the insurance contract. This case was stayed pending the arbitration. After the completion of the arbitration proceeding hearing, the stay was lifted, and this matter proceeded through discovery. Plaintiffs' complaint asserts that the defendant committed bad faith and breached the insurance contract by failing to properly evaluate the plaintiffs' claim and manipulating the arbitration process in its favor. (See Doc. 1, Ex. A, Complaint).

After the close of discovery, the defendants filed a motion for summary judgment, which we denied. A pretrial conference was then scheduled. In advance of the pretrial conference, the parties filed motions *in limine* and a defendant filed a motion to trifurcate the trial. We will address the motions separately.

### 1. Defendant's motion to trifurcate

Defendant has filed a motion to "trifurcate" the trial. It seeks separate trials on the breach of contract claim, the bad faith action and the punitive damages claim. After a careful review, the motion will be denied.

Rule 42 of the Federal Rules of Civil Procedure provides for separate trials as follows:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. . .

FED. R. CIV. P. 42.

The decision to bifurcate (or in this case trifurcate) is left to the trial court's discretion and must be decided on a case by case basis. Idzojtic v. Pennsylvania R.R. Co., 456 F.2d 1228, 1230 (3d Cir.1972). In

2

exercising our discretion, we "must weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22 (3d Cir. 1984). The moving party bears the burden of establishing that bifurcation is appropriate. See Innovative Office Prod., Inc. v. Spaceco, Inc., No. 05-04037, 2006 WL 1340865 *1 (E.D. Pa. May 15, 2006); 9A WRIGHT & MILLER, FED. PRAC. AND PRO. CIV. 2D § 2388.

Defendant Nationwide argues that the breach of contract claim should be tried first because if the jury finds no breach of contract there can be no bad faith and thus no punitive damages claim. Defendant asserts that the evidence to establish bad faith is not relevant to the breach of contract claim and it will be unduly prejudiced if this evidence is presented in the breach of contract claim. Moreover, evidence with regard to the punitive damages claims - - specifically the net worth of Nationwide - - will prejudice the jury against them.

Plaintiffs argue that the bad faith claim is separate from the breach of contract claim, and they could prevail on the bad faith claim even if the jury finds no breach of contract. We agree with the plaintiffs.

Pennsylvania courts have indicated that bad faith claims are separate and distinct from breach of contract claims. For example, in March v. Paradise Mut. Ins. Co., 646 A.2d 1254 (Pa. Super. Ct. 1994), the court held "[a]s this Court has found that claims under [the bad faith statute] section 8371 are separate and distinct causes of action and as the language of section 8371 does not indicate that success on the contract claim is a prerequisite to success on the bad faith claim, we find that an insured's claim for bad faith brought pursuant to section 8371 is

3

independent of the resolution of the underlying contract claim." (footnote omitted) Id. at 1256.

Thus, even if we had a trial on the breach of contract claim and the jury found for the defendant we would still need to try the bad faith claim. Moreover, plaintiffs' breach of contract claim and the bad faith claim are interrelated and based on nearly identical facts. To trifurcate the trial would only lead to confusion, delay and inconvenience that would not serve the interest of judicial economy. Thus, Defendant has not met its burden to establish that trifurcation of the trial is necessary. Proper instruction to the jury and argument from counsel will allow the jury to comprehend the different causes of action and separate them. To have three separate trials would simply be a waste of judicial resources.

**2. Defendant Nationwide's motion *in limine* to preclude evidence that Nationwide allegedly sought an independent medical expert associated with the school of thought that fibromyalgia could not be caused by trauma**

Plaintiffs seek to produce evidence at trial that for the independent medical examination, ("IME"), Nationwide sought out a doctor who was of the school of thought that fibromyalgia cannot be caused by trauma. Defendant seeks to preclude this evidence as irrelevant because the doctor who performed the IME was not of that school of thought and, in fact, he opined that the accident amplified the fibromyalgia symptoms.

Relevant evidence is generally admissible. FED. R. EVID. 402. The Federal Rules of Evidence Provide that: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. "The plain meaning of the Rule demonstrates that the scope of relevant

4

evidence is intended to be broad, and the authorities support such a broad reading." McQueeney v. Wilmington Trust Co., 779 F.2d 916, 922 (3d Cir. 1985).

Plaintiffs argue that the evidence is relevant to the bad faith action. The evidence demonstrates that Defendant's Nurse Case Manager Patti Cahill recommended an IME with Dr. Gary Gordon because he holds the opinion that no scientific evidence links trauma to fibromyalgia. This evidence indicates that plaintiff's interest was not of paramount importance and that defendant was attempting to minimize the value of plaintiff's claim through its investigative process.

The law provides: "To succeed in an action for bad faith, a plaintiff must show by clear and convincing evidence that the insurer lacked a reasonable basis for denying benefits and that the insurer knew or recklessly disregarded its lack of a reasonable basis." Hayes v. Harleysville Mut. Ins. Co., 841 A.2d 121, 125 (Pa. Super. Ct. 2003) (internal quotation marks and brackets omitted).

The bad faith statute, 42 PENN. CONS. STAT. § 8371 does not define "bad faith." The question of bad faith is very fact specific and depends on the treatment of the insured by the insurer. Williams v. Nationwide Mutual Ins. Co., 750 A.2d 881, 887 (Pa. Super. Ct. 2000). The Pennsylvania Supreme Court has indicated that "the utmost fair dealing should characterize the transactions between an insurance company and the insured." Dercoli v. Pennsylvania Nat'l Mut. Ins. Co., 554 A.2d 906, 909 (Pa. 1989) (quoting Fedas v. Ins. Co. of Pennsylvania, 151 A. 285 (Pa. 1930)).

Based upon the broad definition of "relevant" evidence found in the

5

Federal Rules of Evidence and because the issue of "bad faith" is very fact specific, we agree with the plaintiffs' position. This evidence may be useful to the jury in determining whether the defendant acted in bad faith.

### 3. Defendant Nationwide's motion *in limine* to preclude evidence that the IME physician utilized by Nationwide in the underlying UIM claim was allegedly a high school acquaintance of Larry Durkin, Esq, defense counsel for Nationwide in the underlying UIM claim

Defendant asserts that plaintiffs will seek to produce evidence at trial that the IME physician used in the underlying UIM claim, Dr. Ghigarelli, was a high school acquaintance of Larry Durkin, who at the time was defense counsel for Nationwide. Nationwide seeks to preclude this evidence as irrelevant.

Plaintiffs' position is that evidence of Attorney Durkin's relationship with Dr. Ghigarelli is relevant because it speaks to the investigative practices of Defendant Nationwide. Again, we agree with the plaintiffs based upon the broad definition of relevance provided by the Rules of Evidence. The jury might find this evidence relevant to the bad faith claim. This evidence, however, does border on the irrelevant. The evidence will be admitted in a very limited fashion, and the plaintiffs will not be allowed to expend much trial time presenting this evidence.

### 4. Plaintiffs' *motion in limine*

Plaintiffs have filed a *motion in limine* to preclude the following evidence: A. plaintiffs' settlement demands and valuation of their UIM claim; B. the binding high/low agreement entered into by the parties prior to the arbitration; C. the ultimate award by the UIM arbitrators; D. plaintiffs' conduct in selecting their arbitrator; and E. the alleged bias of the court-appointed "neutral arbitrator."

**Issues A, B and C**

Issues A, B and C are related in that plaintiffs argue that all this evidence is irrelevant because in a bad faith claim, the focus is on the defendant's conduct. Evidence of plaintiffs' settlement demand, the high/low agreement and the arbitration award does not speak to whether the defendant acted in good faith to effectuate a fair, prompt and equitable settlement of plaintiff's UIM claim.

Nationwide argues that this evidence is highly probative of the value of the underlying UIM claim and of Nationwide's evaluation of the claim. We find that the evidence is irrelevant. As plaintiffs argue, the focus is on the defendant's actions not on the arbitrators' award, the amount the plaintiffs demanded or the amount of the binding high/low agreement. The evidence will thus be precluded. If, however, the plaintiffs open the door to this evidence with the evidence they present, then it will be allowed.

**Issue D**

Defendant seeks to present evidence that at the time of the arbitration, arbitrator Michael Mey, who was chosen by the plaintiffs, had a referral relationship with plaintiff's counsel. Thus, he arguably had a bias in favor of the plaintiffs. We find that this evidence is irrelevant as to the defendant's conduct that is at issue in this case. Whether plaintiffs picked an arbitrator who had a bias in their favor does not affect whether the defendant acted in bad faith. The evidence will be precluded.

**Issue E**

One of plaintiff's claims is that defendant attempted to manipulate the arbitration process by appointing as their arbitrator an attorney who would have influence over the court-appointed neutral arbitrator. Plaintiffs seek

to preclude the defendant from presenting evidence that the neutral arbitrator was NOT influenced by the defense arbitrator.[1]  Plaintiffs argue that this evidence of whether the neutral arbitrator was actually manipulated is irrelevant and does not excuse Nationwide's duty to deal fairly with policy holders.

Defendant alleges that the most relevant evidence as to whether they manipulated the arbitration process is to ask the actual person who was allegedly manipulated.

We agree with the plaintiffs that this evidence is irrelevant, and it will be precluded.  Once again, however, if plaintiff opens the door to this evidence, we may re-examine our ruling and allow the evidence.

## 5. Plaintiffs' second motion *in limine*

In the underlying state court case, the Court of Common Pleas of Wyoming County has already addressed the issue of whether the defense arbitrator should be removed.  The court found that he need not be removed. Defendant may seek to use this ruling as collateral estoppel with regard to that issue in the present case.  Plaintiff has filed a second motion *in limine* to preclude evidence or argument concerning the alleged application of collateral estoppel as it relates to appointment of the neutral arbitrator in the underlying UIM claim.

Plaintiffs assert that Nationwide has not pled collateral estoppel as an affirmative defense; therefore, they cannot raise it.  Moreover, collateral estoppel is inapplicable as the issue before the County Judge was whether the arbitrator should be removed.  The issue now before the court is

---

[1] The arbitrator Nationwide picked was the Wyoming County Solicitor. The neutral arbitrator's father was a Wyoming County Commissioner.

8

whether the defendant acted in bad faith.

This issue was raised by the defendant in its motion for summary judgment, and we found collateral estoppel inapplicable. The issue in the case before the Wyoming County Court of Common Pleas was not the same as the issue before this court. The Court of Common Pleas had to determine whether the arbitrator should be removed. It was a narrow issue. In the instant case, the issue is whether defendant's actions taken as a whole, including the alleged attempt to manipulate the arbitration, amount to bad faith. The arbitration issue is just one piece of the bad faith claim. Accordingly, we found that collateral estoppel does not apply. (Doc. 81, Summary Judgment Memorandum at 7). The same analysis is applicable to the plaintiffs' motion *in limine*, and we will thus grant it.

**Conclusion**

For the reasons set forth above, defendant's motion to trifurcate and defendant's motions *in limine* will be denied. The plaintiffs' motions *in limine* will be granted. However, we may reconsider that decision if the plaintiffs "open the door" to any of the evidence. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACQUELINE R. SUSCAVAGE
and JOSEPH A. SUSCAVAGE,
wife and husband,
         **Plaintiffs**

v.

NATIONWIDE MUTUAL
INSURANCE COMPANY,
         **Defendant**

No. 3:05cv501

(Judge Munley)

## ORDER

**AND NOW**, to wit, this 3rd day of June 2008, it is hereby **ORDERED** as follows:

1) The Defendant's motion to trifurcate the trial (Doc. 88) is **DENIED**;

2) The Defendant's motion *in limine* regarding the preclusion of evidence that Defendant Nationwide sought an independent medical examination from a medical expert associated with the school of thought that fibromyalgia could not be caused by trauma (Doc. 90) is **DENIED**;

3) The Defendant's motion *in limine* to preclude evidence that the doctor who performed the independent medical examination was a high school acquaintance of Nationwide's counsel (Doc. 92) is hereby **DENIED**;

4) The Plaintiffs' first motion *in limine* (Doc. 98) is **GRANTED**;

5) The Plaintiffs' second motion *in limine*, regarding collateral estoppel (Doc. 96) is **DENIED**.

                                          **BY THE COURT:**

                                          s/ James M. Munley
                                          **JUDGE JAMES M. MUNLEY
United States District Court**